IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| THOMAS LEWIS CLARK | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:17-0041 |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION[1] | ) ) | |

To: The Honorable Waverly D. Crenshaw, Chief District Judge

# **REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiff's motion for judgment on the administrative record. *See* Docket Entry ("DE") 14. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not disabled," and therefore not entitled to Supplement Security Income ("SSI"). (*See* Administrative Record, DE 10, at 16-18).[2] This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b), for initial consideration and a report and recommendation. *See* DE 3.

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq*. Pursuant to Fed. R. Civ. P. 17(d), a public officer who is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill is no longer the Acting Commissioner, the Clerk is DIRECTED to identify Defendant by the official title rather than by name.

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "Tr." followed by the corresponding page number(s) as denoted by the large black print on the bottom right corner of each page.

Upon review of the administrative record and consideration of the parties' filings, I find no error that would necessitate remand in this case and therefore recommend that Plaintiff's motion (DE 14) be **DENIED.**

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on June 27, 2012 due to alleged liver damage, a "bad back," depression, and anxiety, with an onset date of January 1, 2012. (Tr. 75-76). His application was denied initially and on reconsideration. (Tr. 75, 77). Pursuant to his request for a hearing before an ALJ, Plaintiff appeared with counsel and testified at a hearing before ALJ Joan A. Lawrence on March 15, 2016. (Tr. 48).[3] On April 21, 2016, the ALJ denied the claim. (Tr. 16-18). On May 11, 2017, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision; therefore, the ALJ's decision stands as the final determination of the Commissioner. (Tr. 1-3).

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since June 27, 2012,, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following "severe" impairments: degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; hepatitis B and cirrhosis of the liver in a setting of a history of polysubstance abuse, including I.V. drug use; and an adjustment disorder with anxiety and depression related to psychosocial stressors (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he is limited to occasional bending, stooping,

---

[3] An initial hearing was held on June 11, 2015 but was continued by the ALJ in order to provide additional time for Plaintiff to obtain representation. (Tr. 36, 46).

climbing, and crawling; and he should avoid respiratory irritants. He can deal with people and change up to 1/3 of the day.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 17, 1966 and was 45 years old, which is defined as a younger individual 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 27, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. 21-29).

On appeal, Plaintiff submits three assertions of error: (1) that the ALJ erred by failing to find that Plaintiff meets Listing 1.04; (2) that the ALJ improperly rejected the opinion of a treating physician; and (3) that the ALJ improperly rejected his "significant psychological restrictions." DE 15 at 16-22. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative proceedings. *Id*. at 18.[4]

---

[4] Sentence six of 42 U.S.C. § 405(g) states in relevant part that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." It is unclear why Plaintiff requests remand pursuant to sentence six, as he has set forth no argument regarding new and material evidence. The Court therefore construes Plaintiff's prayer for relief as a request for remand pursuant to sentence *four* of 42 U.S.C. § 405(g), which gives the Court authority to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

## II. ANALYSIS

### A. Standard of Review

On appeal, the Court is charged with determining whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As explained by the Sixth Circuit:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. § 416.920(a). If the issue of disability can be resolved at any point in the evaluation process, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 416.920(a)(4). At step one, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the

claimant's RFC and determines whether the claimant can still perform past relevant work; and at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id.* §§ 416.920(a)(4)(i)-(v).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is deemed "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id.* § 416.920(a). "Past relevant work" is defined as work that claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 416.960(b); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). If the claimant is incapable of performing past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. In determining a claimant's RFC, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

**B. The Commissioner's Decision**

The ALJ resolved the current Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff had no past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed him to perform light work with express limitations to account for his severe impairments, and that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform despite such limitations. (Tr. 21-29).

**C. Assertions of Error**

   **1. Listing 1.04.**

The Commissioner's regulations set forth a list of impairments that are considered severe enough to warrant a finding that a claimant is "disabled without considering [his] age, education, and work experience." *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1110 (6th Cir. 1986) (quoting 20 C.F.R. § 404.1520(d)). It is the claimant's burden to demonstrate that his impairment meets all of the specified medical criteria contained in a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

Plaintiff argues that the ALJ erred by failing to find that his condition meets Listing 1.04, subsection C, which involves disorders of the spine that result in "compromise of the nerve root

... or the spinal cord." 20 C.F.R. § 404, Subpt. P, App. 1.[5] The claimant must also demonstrate the following to meet subsection C of this listing:

> Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[6]

*Id*.

Plaintiff's brief argument includes citations to two MRI studies from December of 2014 and May of 2015 that demonstrate, respectively, foraminal and central canal stenosis in his lumbar spine and a disc herniation with mild disc space narrowing in his cervical spine. (*See* Tr. 729, 1100). However, Plaintiff fails to identify any evidence indicative of pseudoclaudication,[7] which is critical in light of his denial of claudicatory complaints upon examination several months after these MRI images were produced. (Tr. 1165). Indeed, Dr. Douglas Mathews, an examining neurosurgeon, recommended that Plaintiff forego surgery to address his back pain based on the dearth of claudicatory issues (Tr. 1166), which weighs against a finding that the listing's criteria have been met. *See Laudato v. Comm'r of Soc. Sec.*, No. 1:15-cv-1143, 2016

---

[5] Plaintiff does not argue that he meets the requirements of subsection A or B of Listing 1.04.

[6] 1.00B2b states the following: "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation."

[7] Pseudoclaudication is defined as "neurogenic claudication," which is identified as "limping or lameness" that is "accompanied by pain and paresthesias in the back, buttocks, and lower limbs, relieved by stooping or sitting[.]" Elsevier Saunders *Dorland's Illustrated Medical Dictionary* 369, 1541 (32nd ed. 2012).

WL 8671526, at *6 (N.D. Ohio June 3, 2016), *report and recommendation adopted*, 2016 WL 4059352 (N.D. Ohio July 29, 2016) (noting claimant's failure to meet Listing 1.04C in part because "there was never a definite diagnosis of pseudoclaudication").

Plaintiff similarly points to no medical evidence of an "inability to ambulate effectively," instead relying on administrative hearing testimony during which he claimed that back pain caused him to "take little short steps." (Tr. 66). Such testimony falls well short of ineffective ambulation as delineated in Listing 1.00B2b, particularly when contrasted with examination findings indicating that has "no trouble with walking," no gait disturbance, a normal standard and tandem gait, full strength and sensation in his lower extremities, an ability to perform a deep squat, and the ability to walk on both his toes and his heels. (Tr. 513, 764, 1165-66). There is also no indication that any provider has recommended that Plaintiff utilize an assistive device, such as a walker or a cane, which further hinders his argument. *See Reece v. Astrue*, No. 2:11-cv-0008, 2012 WL 2131322, at *10 (M.D. Tenn. June 12, 2012), *report and recommendation adopted*, 2012 WL 2872044 (M.D. Tenn. July 12, 2012) (holding that Listing 1.04A was not met in part based on the lack of evidence indicating that claimant required the use of a hand-held assistive device). The ALJ discussed all such evidence in detail. (*See* Tr. 24-25).

Despite the foregoing, the Court notes that the ALJ failed to explicitly reference Listing 1.04 in her opinion. Such oversight is vexing given that the ALJ specifically advised counsel during the administrative hearing that she would consider Plaintiff's condition pursuant to this listing. (*See* Tr. 73). Nonetheless, Plaintiff has failed to demonstrate that his impairment meets the "strict requirements" of Listing 1.04, *Lawson v. Commissioner of Social Security,* 192 F. App'x 521, 529, 530 (6th Cir. 2006), including those related to pseudoclaudication and ambulation. Therefore, the ALJ's oversight is nothing more than harmless error. *See Sheeks v.*

8

*Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 642 (6th Cir. 2013) ("A substantial question about whether a claimant meets a listing requires more than what [the claimant] has put forth here, a mere toehold in the record on an essential element of the listing.")

### 2. Treating physician opinion.

Plaintiff next argues that the ALJ erred by according "little weight" to the opinion of his treating physician, Dr. Willard West. Pursuant to the treating physician rule, which is contained in 20 C.F.R. § 404.1527(c)(2),[8] an ALJ must give controlling weight to the opinion of a treating physician if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." If the ALJ does not accord controlling weight to the opinion, she must consider various factors in determining how much weight to give the opinion, including the length of the treatment relationship, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Id.* § 404.1527(c)(2)-(6). The ALJ must also provide "good reasons" for the weight that is assigned to the treating source's opinion. *Id*. § 404.1527(c)(2).

Dr. West opined that Plaintiff would be unable to lift and/or carry 10 pounds, stand and/or walk for two hours, or sit for more than four hours during an eight-hour workday, and that he would be required to periodically alternate between sitting and standing. (Tr. 1205). In support of these conclusions, Dr. West cited an "abnormal MRI," "abnormal plain films," and "[history] of [herniated nucleus pulposus] that has been treated [with] pain management and physical therapy." (Tr. 1206).

---

[8] The treating physician rule applies to all Social Security claims filed before March 27, 2017, such as the current one. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017).

9

The ALJ provided the following justification for granting little weight to Dr. West's opinion:

> [D]r. West's opinion that the claimant is incapable of even sedentary work is entirely inconsistent with the record as a whole, including the lack of aggressive treatment, Dr. Mathew's [sic] unremarkable clinical findings, and Dr. [Terrence] Leveck's clinical findings and functional assessment. It is also noted that Dr. West is the claimant's medication management doctor and is not a specialist in any field, and that his limited office visit notes and clinical findings do not support his assessment.

(Tr. 25). Plaintiff's primary argument is that the ALJ improperly rejected Dr. West's findings based on his status as a pain management provider (DE 15 at 19), yet a physician's area of practice is clearly an appropriate consideration under the regulations. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). The ALJ additionally emphasized how the vast majority of Dr. West's 15 documented encounters with Plaintiff involved medication refills and yielded overwhelmingly mild examination findings. (*See* Tr. 1103-1116, 1170-77). The ALJ therefore also properly evaluated the "nature and extent of the treatment relationship," as required by the treating physician rule. 20 C.F.R. § 404.1527(c)(2)(ii).

Plaintiff correctly notes that Dr. West's diagnosis included lumbago and chronic pain (*see id.*),[9] but such conditions do little to support the severity of the restrictions contained in Dr. West's opinion. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.") (internal citation omitted). Plaintiff reported neck,

---

[9] "Lumbago" is a "nonmedical term for any pain in the lower back." Elsevier Saunders *Dorland's Illustrated Medical Dictionary* 1076 (32nd ed. 2012).

back, and leg pain during a single encounter in June of 2015 (Tr. 1105), but no other significant problems were documented during his remaining eight months of treatment with Dr. West. (*See* Tr. 1170-77, 1212). In fact, a record from October of 2015 noted that Plaintiff "feels well" and had "no complaints" (Tr. 1176), a finding which buttresses the ALJ's conclusion that Dr. West's opinion is not supported by the medical evidence of record. *Cf. Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 499 (6th Cir. 2014) ("Even the mildness of [the claimant's] treatment— mostly pain medication, weight loss, and exercise—suggested that his ailments were comparatively mild.") (internal citation omitted). Simply put, there is nothing in Dr. West's treatment notes to support the severity of the restrictions set forth in his opinion. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584 (6th Cir. 2010) (noting that because the treating physician's opinion "was not supported by her own treatment notes and was inconsistent with the record as a whole, the ALJ was warranted in discrediting her opinion").

Confusingly, Plaintiff additionally contends that Dr. West's opinion is supported by Dr. Mathews' neurosurgical consultation (DE 15 at 19), despite the ALJ's accurate observation that Dr. Mathews' examination produced largely "unremarkable" findings (Tr. 25), including full strength and sensation in both the lower and upper extremities, no tenderness to palpation in the cervical or lumbar regions of the spine, normal flexion, extension, and rotation of the neck, and the ability to walk on toes and heels. (Tr. 1165-66). Moreover, as discussed *supra*, Dr. Mathews advised against surgical intervention and instead recommended that Plaintiff stop smoking and continue with "conservative treatment" (Tr. 1166), which further bolsters the ALJ's determination. *See Branson v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (noting that conservative treatment "suggests the absence of a disabling condition."). Plaintiff

makes no attempt to explain how such findings support the severity of the limitations included in Dr. West's opinion, thus leaving the undersigned with little choice but to reject this contention.

To prevail at this level, a claimant must "demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014). Here, Plaintiff merely notes that the opinion of a treating physician is generally entitled to "substantial deference" (DE 15 at 18), an argument that does not negate clear precedent mandating that such deference is given "only if [the opinion] is supported by sufficient medical data." *Shelman v. Heckler*, 821 F.2d 316, 320-21 (6th Cir. 1987) (citing *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). The ALJ in the instant case provided ample justification for discounting Dr. West's opinion, including its inconsistency with examination findings, the opinions of multiple other physicians, and the conservative treatment documented in his own treatment records. The Court therefore finds no error in the ALJ's analysis of Dr. West's opinion.

**3. Psychological impairments.**

Plaintiff's final assertion of error involves the ALJ's decision to accord little weight to the opinion of psychological examiner Alice Garland, who, following a consultative examination, diagnosed Plaintiff with persistent depressive disorder, nicotine use disorder, alcohol use disorder, cannabis use disorder, and low average intellectual functioning,[10] and opined that Plaintiff has "moderate to marked" limitations in his ability to make judgments on simple work-related decisions, carry out complex instructions, and respond appropriately to usual work situations and changes in a routine work setting, as well as an "extreme" limitation in

---

[10] Ms. Garland noted that the "low average intellectual functioning" was "provisional" and not based on any formal testing. (Tr. 714).

12

his ability to make judgments on complex work-related decisions. (Tr. 714-16).[11] Plaintiff claims that Ms. Garland's opinion is supported by numerous global assessment of functioning ("GAF") scores of 45 that were assigned by providers at Volunteer Behavioral Health Center ("Volunteer") during the course of his treatment there. DE 15 at 20-21.

Despite relying heavily on this low GAF score, Plaintiff fails to explain in any meaningful way how this score supports the restrictions recommended by Ms. Garland.[12] This omission is not insignificant given that, as acknowledged by Plaintiff, the Commissioner has declined to endorse the use of GAF scores in evaluating claims for Social Security benefits. *See Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007). Indeed, the Sixth Circuit has repeatedly held that this metric has no probative value in Social Security appeals. *See, e.g., Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."); *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 474 (6th Cir. 2013) (noting that the ALJ "was not required to consider [claimant's] GAF scores"). Therefore, Plaintiff's failure to identify the significance of his GAF score arguably constitutes waiver of this argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal citation omitted).

---

[11] The various levels of severity are identified as follows: "Moderate" is defined as "more than a slight limitation ... but the individual is still able to function satisfactorily"; "Marked" is "a serious limitation .... There is a substantial loss in the ability to effectively function"; "Extreme" is "a major limitation .... There is no useful ability to function in this area." (Tr. 715).

[12] According to one authority, a GAF score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision 2000) ("DSM-IV-TR").

Regardless, the Court finds no error in the ALJ's analysis. The ALJ provided a detailed rejection of Ms. Garland's opinion, including its inconsistency with treatment records that revealed normal clinical findings and indicated that Plaintiff's mental condition was improving. (Tr. 26). The ALJ also noted that Ms. Garland's opinion appears to have been based almost entirely on Plaintiff's allegations regarding the severity of his condition, which is crucial in light of the ALJ's determination that such allegations were not entirely credible. (*See* Tr. 24). The ALJ specifically discussed Plaintiff's non-compliance with his prescription medication regimen, a finding which tends to weigh against a claimant's credibility, *see Ranellucci v. Astrue*, No. 3:11-cv-0640, 2012 WL 4484922, at *11 (M.D. Tenn. Sept. 27, 2012), and Plaintiff's decision to substantially underreport the extent of his substance abuse to Ms. Garland, admitting only to marijuana use and alcohol consumption several years earlier. (*See* Tr. 712). The record instead shows that Plaintiff has admitted to recreational opiate use, morphine addiction, other intravenous drug use, cocaine abuse, and methamphetamine abuse (*see* Tr. 60, 374-75), thus providing additional support for the ALJ's conclusion. *See Adams v. Comm'r of Soc. Sec.*, No. 1:10-cv-503, 2011 WL 2650688, at *1 (W.D. Mich. July 6, 2011) ("[T]he ALJ is not prohibited from applying ordinary techniques of credibility evaluation, which would include consideration of a lack of candor in other areas such as drug abuse.").

Plaintiff fails to address any of these findings, instead alleging generally that Ms. Garland's opinion is consistent with his testimony and the disability function report he completed as part of his application. DE 15 at 22. However, this broad assertion requires the undersigned to assume that Plaintiff's allegations regarding the severity of his symptoms are credible, a finding that is both contrary to the ALJ's credibility determination (*see* Tr. 24) and unavailable for consideration due to Plaintiff's failure to raise the issue in his brief. *See Kuhn v.*

*Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief ... are waived.") (internal citation omitted). Even if Plaintiff had proffered an argument in support of his credibility, the ALJ correctly noted that in addition to an inaccurate portrayal of his substance abuse problems to Ms. Garland and a failure to consistently comply with his medication regimen, Plaintiff was 49 years old at the time of the ALJ's decision and had never joined the workforce (*see* Tr. 27), a scenario that further undermines the claim that he would be working if not for his current condition. *See Sears v. Colvin*, No. 1:11-cv-0096, 2015 WL 3606800, at *4 (M.D. Tenn. June 8, 2015) ("The claimant's work history is an appropriate consideration in the ALJ's credibility determination, and a poor work history may support an adverse credibility determination.") (internal citation omitted).

It is the claimant's burden to demonstrate that the ALJ's determination is not supported by substantial evidence, and he "must do more than simply point to countervailing evidence in the record." *See Long v. Berryhill*, No. 1:16-cv-485, 2018 WL 1162621, at *8 (E.D. Tenn. Mar. 5, 2018). Plaintiff cites only a low GAF score as support for Ms. Garland's opinion, which falls woefully short of carrying this burden. *See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (holding that a GAF score "is not, standing alone, sufficient ground to reverse a disability determination"). Plaintiff also fails to identify any evidence suggesting that the opinion was based on anything other than his own incomplete description of his mental condition, which, as noted by Defendant, further undermines the opinion. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th Cir. 2016) ("Regardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and re-package it as an opinion."). Accordingly, the Court rejects this assertion of error and concludes that the decision of the Commissioner should be affirmed.

# III. CONCLUSION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 14) be DENIED and the Commissioner's decision be AFFIRMED.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge